ARTHUR H. NOBLE, demandante y apelado, *v.* JOAQUINA RODRÍGUEZ DE MADERA, ET AL., demandados y apelantes.

Núm. 9744.—*Sometido:* Diciembre 9, 1948. *Resuelto:* Enero 18, 1949.

*Eulogio Riera* y *Rafael Rodríguez Ema,* abogados de los apelantes; *Fernando Ruiz Suria,* y *Brown, Newsom & Córdova,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR .SNYDER emitió la opinión del tribunal.

El demandante era dueño en común pro indiviso de un condominio equivalente a 49/72 partes en una finca y Emilia Luisa Borda era dueña de las 23/72 partes restantes. Por medio de una venta judicial los demandados adquirieron las 23/72 partes pertenecientes a Emilia Luisa Borda. Luego el demandante radicó este pleito para ejercitar su derecho de retracto legal en cuanto al condominio de las 23/72 partes, a tenor con el artículo 1412 del Código Civil, ed. de 1930.(¹)

---

(¹)El artículo 1412 dispone en parte que ''El copropietario de una cosa común podrá usar del retracto en el caso de enajenarse a un extraño la parte de todos los demás condueños o de alguno de ellos.''

En su demanda alegó el demandante que luego de consumarse el retracto, él vendría a ser el único dueño de la finca.

Los demandados solicitaron la desestimación de la demanda porque ésta no alegaba que el demandante se comprometía a no vender durante cuatro años la participación del dominio que intentaba retraer, según lo exige el inciso 5 del artículo 1616 de la Ley de Enjuiciamiento Civil para Cuba y Puerto Rico.(²) La corte inferior resolvió que el inciso 5 del artículo 1616 no se aplicaba a casos como el presente en que el demandante pasaría a ser el dueño exclusivo luego de efectuarse el retracto. Por consiguiente, declaró sin lugar la moción para que se desestimara la demanda. Posteriormente, y a requerimiento de los demandados, la corte de distrito dictó sentencia a favor del demandante, de la cual apelan los primeros.

■■ Éste es un caso nuevo en esta Isla. Si bien hemos resuelto que el inciso 5 del artículo 1616 está en vigor en Puerto Rico, este Tribunal nunca se ha visto en la necesidad de determinar si dicho inciso es aplicable a un caso donde el demandante pasa a ser el único dueño de la finca después de efectuado el retracto. *Cf. Vellón* v. *Central Pasto Viejo,* 34 D.P.R. 233, y casos allí citados. Y hasta donde sepamos, ningún comentarista ha discutido este punto específico.

El razonamiento de la corte inferior puede sintetizarse como sigue: el fin primordial del artículo 1412 es terminar los condominos lo más pronto posible y consolidar el título de la propiedad en una sola persona. Pero si el demandante tiene que comprometerse a no vender la participación retraída, el condominio podría revivirse. Esto ocurriría si el demandante, luego de efectuar el retracto, decidiese vender toda la propiedad dentro de los cuatro años. Podría vender solamente la participación que ahora tiene y se vería

---

(²) El artículo 1616 dispone que ''Para que pueda darse curso a las demandas de retracto se requiere: . . . 5. Que se comprometa el comunero a no vender *la participación del dominio que retraiga,* durante cuatro años.'' (Bastardillas nuestras).

obligado a retener el título sobre la participación retraída. El exigir el cumplimiento del inciso 5 del artículo 1616, en este caso destruiría el propósito del artículo 1412. En su consecuencia, el inciso 5 no es de aplicación al presente caso.

En apelación, los demandados atacan la validez de este razonamiento de la corte de distrito. Examinemos primeramente el historial y el propósito del inciso 5 del artículo 1616.

El artículo 1412 "se dirige a extinguir la comunión que suele ser fuente perenne de discordias". 4 Escriche, Diccionario de Legislación y Jurisprudencia 942, ed. 1876. Pero el legislador también previó la posibilidad de que un comunero pudiera redimir bajo el artículo 1412 con fines especulativos; v.g., con el fin de revender a mayor precio. Para contrarrestar esto, le exigió al retrayente antes de 1855 un juramento al efecto de que deseaba la finca para sí y no la retraía con fines especulativos. Esta política contra la especulación por parte de un retrayente fué reforzada por el artículo 674 de la Ley de Enjuiciamiento Civil para Cuba y Puerto Rico de 1855, que le prohibía al retrayente traspasar durante cuatro años la participación retraída. Esta prohibición fué incorporada al artículo 1618 de la Ley Española de Enjuiciamiento Civil de 1881 y al artículo 1616 de la Ley de Enjuiciamiento Civil para Cuba y Puerto Rico de 1885.(³)

---

(³)"El objeto de estas disposiciones es asegurarse que se verifica el retracto por los motivos que ha tenido la ley para concederlo, que en su esencia no son otros que atender, con anterioridad a un extraño, para la preferencia de la cosa que se vende, a aquél que por ser descendiente de la persona a quien pertenecía, o por poseerla en común con otro, o por pertenecerle su dominio útil o directo, tiene un interés mayor de afecto, de estimación o material en su compra que aquél. Ya el Fuero Real disponía en la ley 13, tít. 10, lib. 3°., que el retrayente jurara que quería la cosa para sí y que no la retraía para privar de ella al comprador, con el objeto de enajenarla a otra persona que no tuviera el derecho de retraer y a quien quisiera favorecer, o que le ofreciera por ella mayor precio que el que le costaba retrayéndola. Mas la obligación de no enajenar la finca el retrayente no debía imponerse

Otras medidas fueron adoptadas para asegurar el cumplimiento de la prohibición contra traspasos durante cuatro años de la parte retraída. El artículo 1626 de la Ley de Enjuiciamiento Civil para Cuba y Puerto Rico de 1885 disponía que "se tomará razón en el Registro de la propiedad del compromiso que se haya contraído en cualquiera de los casos 4º., 5º. y 6º. comprendidos en el art. 1616", con el fin de dar aviso a terceros. Se declaraba nula la transferencia por el retrayente, sin el consentimiento del comprador original, antes de que expirara el período. (Artículo 1628, Ley de Enjuiciamiento Civil para Cuba y Puerto Rico de 1885; artículo 690, Ley de Enjuiciamiento Civil para Cuba y Puerto Rico, 1855; artículo 1630, Código Español de Enjuiciamiento Civil de 1881). Además, pronto se notó que esta última sanción no era efectiva, ya que no era de ningún beneficio práctico al comprador original cuya participación en la propiedad había sido retraída. 6 Manresa, Comentarios a la Ley de Enjuiciamiento Civil Reformada 115, 3ra. ed. Por tanto, se complementó la prohibición contra el traspaso disponiendo que si lo solicitaba el comprador original, el retracto quedaría sin efecto si el retrayente vendía la propiedad dentro del período prohibídole. Artículo 1630, Código Español de Enjuiciamiento Civil de 1881; Manresa, *op-cit.* 115.

Con este historial en mente, pasemos al problema suscitado en este caso específico; es decir, si el inciso 5 del artículo 1616 se aplica cuando el demandante viene a ser el

por más tiempo que el necesario para llenar el objeto expuesto, sin producir por otra parte la estancación de la propiedad. Por esto la ley limitó el término de esta obligación, siendo mayor o menor, según que la enajenación puede ser más o menos perjudicial al interés público, *por resultar de ella la indivisión de bienes comunes o la separación de los dominios directo y útil.*" 4 Escriche, Diccionario de Legislación y Jurisprudencia 941, ed. de 1876. (Bastardillas nuestras).

"Era antigua práctica en el retracto de condueños, cuyo origen habría que buscarlo en las doctrinas de los expositores, la de que el retrayente jurase que quería para sí y no para otro la cosa que se proponía retraer, y que no procedía con fraude. La ley de Enjuiciamiento Civil de 1855, al regularizar el procedimiento de este juicio sumario, trató de evitar los fraudes a que, como

único dueño luego de efectuado el retracto. El artículo 1412 establece una fórmula por la cual un comunero puede a su discreción eliminar el condominio de alguna propiedad o reducir el número de comuneros. De esto la corte de distrito infirió que uno de los propósitos del artículo 1412 es evitar la renovación del condominio. Pero una cosa es eliminar el condominio y otra cosa es renovarlo o crear uno nuevo. Nada hay en el artículo 1412 en relación con esto último; está dirigido únicamente a eliminar o reducir un condominio ya existente. Además, aun cuando adoptásemos la presunción de la corte de distrito de que el Código Civil aborrece los condominios y en consecuencia por implicación que uno de los objetivos del artículo 1412 es impedir su renovación, no podemos evitar el efecto de los claros y absolutos términos del inciso 5 del artículo 1616 que prohibe sin excepción alguna el traspaso durante cuatro años de la parte retraída.

No podemos convenir con el demandante en que el inciso 5 de su faz se aplica solamente cuando el condominio continúa luego de efectuado el retracto. Se basa en las porciones en bastardillas del inciso 5 del artículo 1616 y en las citas de Escriche que se encuentran en las notas 2 y 3, respectivamente. Pero en ese lenguaje nada encontramos que sostenga su teoría. Al hacer esta contención, el demandante también descansa en 10 Manresa, Comentarios al Código Civil 355, ed. de 1908, que dice así:

---

dice Ortiz de Zúñiga (Práctica forense), daban lugar los retractos por falta de precauciones oportunas, y entonces apareció, por vez primera, la prohibición de enajenar el retrayente durante cuatro años la cosa que retrajera. El propósito de esta prohibición salta a la vista: se buscó por ella que el retracto no se desviase de su fin útil y se convirtiera en un instrumento de especulación en daño del comprador.'' 23 Scaevola, Comentarios al Código Civil 874-75, ed. de 1906.

''Para evitar que el retracto de comuneros se intente por especulación o con fines ajenos al propósito de la ley se obliga al retrayente también como requisito esencial de la demanda, a que se comprometa en ella a no vender la participación de dominio que retraiga durante cuatro años.'' 6 Manresa, Comentarios a la Ley de Enjuiciamiento Civil 108, 3ra. ed.

". . . Por otra parte, la razón de tal precepto, o no se alcanza, o está en oposición con el espíritu y la tendencia del Código en el retracto de comuneros, que, según hemos dicho, es dar facilidades para que el estado de indivisión termine; esa oposición se comprende desde el momento en que, según el artículo de la ley procesal, es imposible antes de los cuatro años la venta a otro comunero de la participación retraída, lo cual podría conducir a la unidad del dominio. . . ."

Es obvio que Manresa no aprobaba el inciso 5 del artículo 1616 porque hacía imposible la reventa por un comunero que continuaba siéndolo luego de efectuado el retracto. Pero Manresa nada dice en relación con el problema de la reventa por un retrayente que pasa a ser único dueño. Del silencio de Manresa el demandante infiere que aquél aprueba su posición. Sostiene que Manresa no discutió esta cuestión porque nunca se le ocurrió que alguien pudiera alegar que un solo dueño después de efectuado el retracto estaba impedido por el inciso 5 del artículo 1616 de vender la parte retraída hasta transcurridos cuatro años. Su argumento es que Manresa estaba abiertamente opuesto a la doctrina del inciso 5; si hubiera creído que era de aplicación aquí, hubiera discutido esta situación y utilizado su injusta aplicación para reforzar su oposición a la doctrina. Sin embargo, creemos que no conduciría a ningún fin práctico discutir esta teoría un poco débil basada en no haber Manresa discutido el presente caso. El inciso 5 del artículo 1616 es claro y de su faz aplicable aquí. Esto es suficiente para decidir esta contención específica en contra del demandante.

El apelado aduce otro argumento. No obstante el hecho de que el artículo 1616 no contiene excepciones en cuanto a su prohibición de que no se traspase durante cuatro años, arguye que por "legislación intersticial" debemos intercalar una excepción al inciso 5 a favor de un retrayente que luego de efectuado el retracto viene a ser único dueño. De otro modo, alega, el propósito del Código Civil en desalentar condominios sería frustrado si el retrayente, encon-

trándose falto de fondos durante los cuatro años, vende solamente su participación original en la propiedad porque el artículo 1616 le prohibe vender durante ese período la participación retraída.

Como hemos visto, Manresa deploró el hecho de que bajo ciertas circunstancias el artículo 1616 sea contrario a la filosofía comprendida en el artículo 1412 de desalentar los condominios de propiedad. Manresa tenía en mente propiedad poseída en común por *A, B* y *C. A* le vende su participación a *D*, un extraño. *B* insta pleito de retracto contra *D*, y tiene éxito. Esto reduce el número de comuneros, que es uno de los objetivos del Código Civil al disponer la acción de retracto por los comuneros. Sin embargo, durante cuatro años no puede cumplirse a cabalidad la política comprendida en el artículo 1412, ya que *B* no puede vender toda su participación en la propiedad a *C* durante dicho término; sólo puede venderle su participación original, pero no la parte retraída de *D*.

Una respuesta a este punto es que nada hay que impida a *B* comprarle la participación a *C* y con ello extinguir el condominio. Sin embargo, una respuesta más importante es que la política del artículo 1412 no es absoluta. La Legislatura tuvo por miras reducir o eliminar los condominios. Pero condicionó el privilegio o la opción que le dió a los retrayentes. Para evitar que éstos especularan, aprobó el inciso 5 del artículo 1616 prohibiendo el traspaso de la parte retraída durante cierto tiempo. En el ejemplo expuesto por Manresa esta prohibición paraliza la reducción o eliminación adicionales del condominio durante cuatro años. Pero la Legislatura deliberadamente tomó este rumbo para salvaguardar el subordinado pero importante objetivo de evitar la especulación mediante el retracto.

En igual forma, cuando como aquí el retracto trae por resultado que el título pase a manos de una sola persona, la restricción en cuanto al traspaso contenida en el inciso 5 puede concebiblemente resultar en una renovación del condo-

minio bajo ciertas circunstancias y con ello frustrarse el espíritu o filosofía del artículo 1412. Si el demandante se ve obligado o desea vender dentro de cuatro años, se le permite bajo el artículo 1616 vender solamente su participación original en la propiedad. Sin embargo, la Legislatura no estableció excepción alguna en el inciso 5 del artículo 1616 para tales casos. Cuando la Legislatura creyó aconsejable proveer una excepción en una situación algo similar, lo hizo expresamente. Artículo 1616, inciso 4, Ley de Enjuiciamiento Civil para Cuba y Puerto Rico de 1885.(⁴) Optó por frustrar la política del artículo 1412 de cuando en vez con el fin de evitar la especulación que pudiera surgir si las excepciones para éste u otros casos fuesen incluídas en el inciso 5. Las consideraciones comprendidas en el artículo 1412 frente al inciso 5 fueron resueltas por la Legislatura en contra del demandante. No compete a las cortes redactar de nuevo el inciso 5 del artículo 1616 y establecer una excepción que la Legislatura optó por dejar fuera del estatuto.

Además, según dijimos en el caso de *Vellón* a las págs. 239-40, el artículo 1412 es en sí una restricción al traspaso. Limita el derecho de un comunero que desea vender: el comprador de su participación muy bien puede ser desalentado por el derecho de retracto que se le concede a los otros comuneros. Por tanto, no es enteramente irrazonable para éstos, que gozan de los beneficios de la restricción sobre el traspaso por parte de un comunero que desea vender, encontrarse luego que ellos también están impedidos durante cuatro años de especular con los beneficios que les concede el artículo 1412.

█ Con el fin de sostener la sentencia de la corte de distrito, el demandante aduce una contención alternativa. Hemos resuelto que el inciso 5 del artículo 1616 está en vigor en Puerto Rico. *Vellón* v. *Central Pasto Viejo,* supra; *Mar-*

---

(⁴)Ese inciso, que ya no existe en nuestro Código, dice así: ''Que se contraiga, si el retracto es gentilicio, el compromiso de conservar la finca retraída a lo menos dos años, a no ser que alguna desgracia hiciere venir a menos fortuna al retrayente y lo obligare a la venta.''

*tínez* v. *Pirallo*, 61 D.P.R. 91. Y véanse *González* v. *Acha et al.*, 21 D.P.R. 134; *Llambías* v. *Pagán*, 65 D.P.R. 451, 463–4. El demandante alega que estos casos fueron resueltos erróneamente y deben ser revocados. Insiste en que debemos resolver que el inciso 5 no está en vigor en Puerto Rico.

La médula del argumento del demandante es como sigue: No obstante el hecho de que el inciso 5 está incluído en la Ley de Enjuiciamiento Civil, ésta es una disposición sustantiva y no procesal, 27 Enc.Jur. Esp. 524; 10 Manresa, Comentarios al Código Español 324–25, 4ta. edición. En vista de la naturaleza sustantiva del inciso 5, la Legislatura lo hubiera incluído en nuestro Código Civil de 1902 si hubiera querido que el inciso 5 continuara en vigor en la isla. Lejos de así hacerlo, la Legislatura lo derogó mediante la cláusula derogatoria del Código Civil de 1902, que deroga no solamente el antiguo Código Civil si que también "todas las demás leyes o cuerpos legales que directa o indirectamente se opongan a las disposiciones" del mismo. Toda vez que el inciso 5 no fué incluído en el Código Civil de 1902, dicho inciso fué derogado por estar en conflicto con el Código. De lo contrario, seguiría existiendo un requisito sustantivo que no se halla en el Código. Esta intención de derogar el inciso 5 fué reafirmada cuando el Código de Enjuiciamiento Civil de 1904 fué aprobado sin que se incluyera en el mismo el inciso 5.

No podemos convenir con esta contención del demandante. Si bien el inciso 5 es de naturaleza sustantiva, resta el hecho de que fué incluído en una Ley de Enjuiciamiento Civil. En su consecuencia, es difícil creer que la Legislatura tuvo por miras mediante la cláusula derogatoria del Código Civil de 1902 hacer llegar su mano hasta la Ley de Enjuiciamiento Civil y con ello derogar indirectamente esta disposición específica. Más bien somos de opinión que el artículo 361 del Código de Enjuiciamiento Civil, ed. de 1933, es la única

cláusula derogatoria que concebiblemente podría aplicarse aquí. Pero el artículo 361 claramente no deroga el inciso 5. Dispone que "Toda ley, reales decretos, órdenes, órdenes militares, disposiciones o parte de ellos incompatibles o en conflicto con este Código quedan por la presente derogados." Y el inciso 5 en manera alguna es incompatible o está en conflicto con las disposiciones del Código de Enjuiciamiento Civil. El razonamiento de los casos de *González* v. *Acha et al.*, supra, y *Más* v. *Llona*, 31 D.P.R. 30, sostiene esta conclusión. El caso de *Benítez* v. *Díaz*, 28 D.P.R. 673, resolvió que uno de los requisitos procesales del artículo 1616 había sido derogado por el Código de Enjuiciamiento Civil de 1904. Pero el caso de *Benítez* es distinguible precisamente porque nuestro caso envuelve una disposición sustantiva del artículo 1616. No vemos motivo alguno para revocar nuestros casos que resuelven que el inciso 5 está en vigor en Puerto Rico.

 Sólo queda una cuestión más en este caso. Hemos resuelto que la demanda debe alegar que el demandante se compromete a no vender durante cuatro años su participación en la propiedad retraída. El demandante nos pide, de llegar a esta conclusión, que devolvamos el caso a la corte de distrito de manera que él pueda enmendar su demanda insertando en ella tal alegación.

Los demandados se oponen a esta petición por el fundamento de que el artículo 1414 del Código Civil dispone que "No podrá ejercitarse el derecho de retracto legal sino dentro de nueve días contados desde la inscripción en el registro, y en su defecto, desde que el retrayente hubiera tenido conocimiento de la venta." Pero el demandante cumplió con el artículo 1414: radicó su demanda dentro de nueve días después de efectuada la venta. Es cierto que estamos resolviendo que la demanda era defectuosa porque no incluyó la alegación en cuestión. Pero a este respecto la demanda enmendada se retrotraerá a la fecha de la demanda original,

y será considerada como radicada en tiempo. Por consiguiente, el demandante tiene derecho a enmendar su demanda insertándole la alegación que le falta, al ser la demanda devuelta al tribunal inferior.(5)

*La sentencia del tribunal de distrito será revocada y se devolverá el caso a dicho tribunal para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Negrón Fernández no intervino.

(5)No es necesario determinar si las Reglas de Procedimiento Civil son de aplicación a este caso. Bien bajo la Regla 15(c) o bajo el procedimiento anterior, llegaríamos al mismo resultado. Véanse *Roses* v. *Juliá,* 67 D.P.R. 518; *Sánchez* v. *Cooperativa Azucarera,* 66 D.P.R. 346; *Bithorn* v. *Santana,* 68 D.P.R. 300, según éstos se comparan con *Vellón* v. *Central Pasto Viejo,* 37 D.P.R. 569.